**IT IS SO ORDERED.**

**SIGNED THIS: February 14, 2024**

_____
**Mary P. Gorman**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

In Re                          )
                               )    Case No.        23-70116
JOEL JAY THOMAS and            )
DEANN JULIE THOMAS,            )
                               )    Chapter 13
            Debtors.           )

## O P I N I O N

Before the Court is an Application for Compensation of Attorney Fees filed by the Debtors' attorney, Desirae Bedford.[1] After considering the documents filed in this case, including the objection of the Chapter 13 Trustee and Attorney Bedford's response, the Application for Compensation will be denied in its entirety; Attorney Bedford will be denied all fees and will be

---

[1] The Application was filed by Attorney Bedford on behalf of Recovery Law Group, APC, the law firm with which she is associated. This Court does not recognize appearances by law firms; only individual attorneys, rather than the firm with which they are associated, may be of record. Further, every attorney of record is required to file a fee disclosure, and the Disclosure of Compensation filed in this case was signed and submitted by Attorney Bedford as attorney for the Debtors. The Order to be entered here will apply to attorney fees paid or incurred by the Debtors whether paid or promised to Attorney Bedford or the law firm with which she is associated.

ordered to disgorge any amounts already paid by the Debtors over and above the case filing fee.

## I.  Factual and Procedural Background

On February 24, 2023, Attorney Desirae Bedford filed a voluntary petition for Joel Jay Thomas and Deann Julie Thomas ("Debtors"), commencing the above-captioned Chapter 13 case. The Debtors' electronic signatures were affixed to the petition and to an accompanying statement verifying the Debtors' social security numbers. The documents were dated as having been signed on February 24th. The Debtors filed a Chapter 13 plan on March 5, 2023. The Debtors also filed a separate package of documents that included their schedules, statement of financial affairs, and other required documents, as well as another voluntary petition bearing the Debtors' electronic signatures dated March 5th. That filing was stricken because it was incorrectly docketed. On March 7th, Attorney Bedford filed a motion to extend the automatic stay on behalf of the Debtors. The motion acknowledged a prior Chapter 13 case filed by the Debtors on January 27, 2022, which Attorney Bedford asserted had been dismissed at the Debtors' request after hearing on March 21, 2022.

The stricken documents were refiled March 10, 2023, this time without the additional voluntary petition. Included in the package, Attorney Bedford's disclosure of compensation recited her agreement with the Debtors to accept fees of $4250 for the provision of legal services, $1500 of which had already been paid. The refiled schedules included creditors not listed on the originally

filed mailing matrix, prompting a deficiency notice to issue with instructions to file an amended matrix.

Also on March 10th, the Chapter 13 Trustee filed an objection to the motion to extend the stay, as well as a motion to disgorge attorney fees. The objection to the Debtors' motion to extend the stay complained that the motion gave "a false history of what occurred in the prior case[,]" explaining that the only hearing held in the case before it was dismissed for failure to pay the filing fee related to the Debtors' motion to extend the stay there; no request for dismissal was ever made by the Debtors in the prior case. The objection further noted that the prior case was not even disclosed on the voluntary petition in this case and that, despite citing Mrs. Thomas' loss of wage income between cases as a factor in filing the present case, the Debtors had reported no wage income for Mrs. Thomas in 2021, 2022, or 2023. The Trustee's motion to disgorge attorney fees incorporated her objections to the motion to extend stay, suggesting that Attorney Bedford did not run a PACER search before filing this case and failed to review the docket in the prior case. The Trustee further noted that the other documents filed in this case, namely the stricken schedules, were not adequately reviewed before filing in that they were contradictory and therefore necessarily inaccurate.

On March 22, 2023—just minutes before the Debtors' motion to extend the stay was scheduled to be heard—Attorney Bedford filed an amended motion to extend the stay. Attorney Bedford acknowledged the inaccuracies of the original motion and sought to justify the filing by asserting that she had looked

at the case docket and saw the case was dismissed but presumed the dismissal was voluntary based on representations by the Debtors. Attached to the amended motion was an affidavit from the Debtors regarding their mistaken belief about the circumstances of the prior case dismissal. Attorney Bedford also filed several amended schedules and other documents, including an amended voluntary petition bearing Mr. Thomas' electronic signature dated March 10, 2023, but no signature for Mrs. Thomas. The filing was later stricken due to the lack of signature.

The March 22 hearing on the motion to extend stay, as well as the outstanding mailing matrix deficiencies and the Trustee's motion to disgorge attorney fees, was held as scheduled. Attorney Bedford acknowledged that it was her responsibility to make sure documents are filed properly and to verify the representations made in those documents prior to filing but suggested that she did the best she could to make sense of what occurred in the prior case given that she did not represent the Debtors at that time. The Court admonished Attorney Bedford, explaining that the history of the Debtors' bankruptcy cases and all that had been filed or occurred was readily available in the electronic docket; the failure to carefully review that resource was inexcusable. In addition to the mailing matrix deficiencies, the Court noted the litany of problems—including the unsigned amended petition filed just before the hearing—and the number of other notices issued by the Clerk seeking correction of various issues in the short time the case had been pending. The Court ultimately concluded that the Debtors failed to demonstrate that this

case was filed in good faith and that the motion to extend stay, as well as the amended motion, should be denied. The Court found that due diligence was not exercised in filing the motions, the case was the Debtors' third pending in just over a year, documents filed in the case contained contradictory or inaccurate information, and the case had been plagued by filing deficiencies and other problems in the short time it had been pending. In addition, the amended motion was filed minutes before the hearing with only a few days left before the stay was to expire, making any meaningful notice impossible. As for the Trustee's motion to disgorge attorney fees, the Court declined to grant the request for disgorgement at that juncture but said it would enter an order denying Attorney Bedford the Court's standard "no-look" fee and requiring her to file a fee application upon confirmation of a Chapter 13 plan. Orders were entered accordingly following the hearing.

Attorney Bedford filed an amended matrix to add newly identified creditors in the Debtors' amended schedules. And, on March 23, 2023, Attorney Bedford filed another amended petition signed by both Debtors, an amended statement of financial affairs, and other amended documents. Following the meeting of creditors held April 21, 2023, the Trustee filed a confirmation report highlighting several issues with the Debtors' original plan. The Trustee noted secured debts and leases that the Debtors intended to maintain but failed to provide for arrearage payments in the plan; others were included in the plan but at incorrect payment amounts. The Trustee also noted the inability to verify current monthly income and other information without

the required documentation and that the Debtors had unfiled tax returns. After an objection period, hearing was set on confirmation of the original plan. Prior to the hearing, the Debtors filed their first amended plan, an amended statement of current monthly income and statement of disposable income, and amended schedules I and J.

The hearing on the original plan was held as scheduled on June 1, 2023. The Court noted the filing of the first amended plan but did not cancel hearing on the original plan because the amended plan was deficient on its face. The Court explained that the first amended plan provided for payment of the "no-look" attorney fee despite the previously entered order denying Attorney Bedford the "no-look" fee. In addition, the final page of the first amended plan included some additional non-standard provisions and bore the electronic signatures of the Debtors dated May 25, 2023, but the amended plan also included a second final page bearing the handwritten signatures of the Debtors dated May 24, 2023, without any non-standard provisions. The Court explained that the Debtors' signatures were not required on the plan, but they needed to be on a single page if included and the plan filed needed to be the plan actually signed by them. The Court suggested that Attorney Bedford may have violated Bankruptcy Rule 9011 by filing the first amended plan. With that admonition, the Court denied confirmation of the original and first amended plans and gave Attorney Bedford time to file a second amended plan.

On June 14, 2023, Attorney Bedford filed the Debtors' second amended plan, amended schedules I and J, and an emergency motion to vacate the order

denying extension of the automatic stay and to impose the automatic stay under §362(c)(4). The emergency motion asserted that the Debtors had received an eviction notice regarding the lease for their residence. The emergency motion acknowledged pre- and post-petition lease payment defaults and stated the Debtors' desire to remain in their apartment and pay pre-petition arrearages through their Chapter 13 plan. The emergency motion was set for hearing.

The Trustee filed an objection to the second amended plan and a response to the emergency motion. The plan objection listed numerous drafting errors and provisions at odds with the claims and amended documents filed in the case; several of the filed documents were patently incorrect and at least one claim was objectionable on its face. The Trustee noted that the plan proposed to cure the arrearage on the Debtors' apartment lease but that no claim was filed by or for the creditor prior to the bar date. The objection also reported that the Debtors were behind on their payments to the Trustee. The response to the emergency motion focused on the issues concerning the Debtors' apartment lease, which were raised in the Trustee's confirmation report filed April 21, 2023. Despite the importance of remaining in the apartment and curing the lease payment default through their Chapter 13 plan, the Debtors failed to timely file a claim for the creditor when the creditor did not file one for itself.

On the eve of the hearing on the emergency motion, the Debtors filed a motion for allowance of late-filed proof of claim as timely filed, an amended statement of current monthly income, and a third amended plan, as well as

responses to the Trustee's response to the emergency motion and objection to the second amended plan. The motion for allowance of late-filed proof of claim stated that the Debtors had filed a proof of claim for their landlord contemporaneously with the motion on June 26, 2023—three weeks after the deadline for the Debtors to do so. The motion sought to justify the late filing, citing the excusable neglect standard of Bankruptcy Rule 9006(b)(1) and the Debtors' mistaken belief that their landlord would agree to a rent increase to catch up on past due rents. The Debtors intended to have the Trustee pay the landlord under the terms of their newly-filed third amended plan. In their response to the Trustee's objection to the second amended plan, the Debtors asserted that the other issues raised were mostly resolved in the third amended plan together with amended documents filed in the case and an amended claim filed by the IRS. The response also noted that the Debtors were awaiting the filing of a deficiency claim for the creditor secured by the vehicle to be surrendered, believing that the creditor was holding off until granted stay relief. The Debtors' response to the Trustee's response to the emergency motion to impose the stay rehashed the arguments set forth in the emergency motion and incorporated the assertions made in the motion to allow late-filed claim.

An order denying the emergency motion was entered following the scheduled hearing on the matter on June 27, 2023. At the hearing, the Court first noted that the motion was essentially a request for relief under Bankruptcy Rule 9024 and Federal Rule of Civil Procedure 60. The Court then asked Attorney Bedford what grounds existed to reconsider and vacate its prior

ruling when the Debtors were fully aware that they were behind on rent when they filed but did not originally schedule the debt and continued to miss regular lease payments after filing and after extension of the stay was denied. Offering no justification under the Rules, Attorney Bedford instead invoked the Court's equitable authority under §105. The Court explained that §105 did not provide authority to impose the stay in contravention of the provisions of §362(c). Rather, the Rules provide the authority and standards for seeking relief from prior orders, and no attempt was made by Attorney Bedford to satisfy the provisions of those Rules. The Debtors' continued failure to make payments post-petition and the fact that a timely proof of claim was not filed for the landlord compounded the problem. For those reasons, the emergency motion was denied.

The next day, the Court entered an order setting a date for the Debtors to file a memorandum in support of their motion for allowance of late-filed proof of claim. In the meantime, the Trustee filed an objection to the Debtors' third amended plan based in part on its provision for payment of the late-filed claim that was the subject of the Debtors' pending motion. Attorney Bedford filed a memorandum of law in support of the Debtors' motion to allow late-filed claim contending that allowance of the claim would not harm or prejudice any creditors and that it was the only remaining impediment to plan confirmation.

At the July 11th hearing on the matter, the Court noted that Attorney Bedford did not address in her memorandum the legal issues previously raised by the Trustee regarding §1305, which authorizes a creditor—but not the

debtor—to file a claim for post-petition debts concerning property necessary for the debtor's performance under a plan. The Court stated that it was not aware of any authority for allowing the Debtors to use §1305 to force a post-petition creditor to involuntarily submit to the jurisdiction of the Court and participate in the Debtors' bankruptcy case; Attorney Bedford acknowledged that she was unable to find any such authority. For that reason and the Court finding that the Debtors were not able to establish excusable neglect as to the prepetition portion of the claim, the motion for allowance of late-filed claim was denied.

Meanwhile the Trustee filed a motion to dismiss for nonpayment as well as an objection to the Debtors' late-filed claim for their landlord based on the denial of the motion to allow it. The Debtors responded to the motion to dismiss, stating that the plan delinquency had been rolled into the third amended plan. The day before the hearing on the motion to dismiss and the Debtors' third amended plan, a fourth amended plan was filed and an agreed order was entered for a wage deduction in favor of the Trustee. The hearing was held as scheduled; the Trustee's attorney noted the agreed wage deduction order and asked that the motion to dismiss be continued several weeks. As for the third amended plan, Attorney Bedford noted her filing of the fourth amended plan providing for the Debtors rather than the Trustee to pay the landlord directly. But while the fourth amended plan did add such a provision, the provision for payments to the landlord to be made by the Trustee had not been removed from that plan. Because the plan contained contradictory provisions, the Court declined to notice it for objections and denied

confirmation of both the third and fourth amended plans. In giving the Debtors time to file a fifth amended plan, the Court urged Attorney Bedford to take the time to carefully draft a confirmable plan.

The fifth amended plan initially filed by Attorney Bedford was stricken for not being docketed as a fifth amended plan and because the mailing matrix attached to the certificate of service was associated with different debtors in a different case. The refiled document was stricken for a similar reason; it was docketed as a motion to modify or amend fifth amended plan. The order striking laid out specific instructions for correctly docketing the amended plan, and on September 8, 2023, one day after it was due, Attorney Bedford refiled and correctly docketed the Debtors' fifth amended plan. No objections were filed, and the fifth amended plan was finally confirmed by order entered October 3, 2023. The confirmation order set November 2, 2023, as the deadline for Attorney Bedford to file an itemized fee application for any compensation sought or previously paid. Following confirmation, the Trustee's pending motion to dismiss was resolved by an agreed repayment order, amortizing arrears over the remainder of the plan term.

Attorney Bedford timely filed her Application for Compensation now before the Court. The Application seeks approval of $4250 in fees and $313 in costs for the filing fee, of which $1813 was paid prior to filing and $2750 remains outstanding. Attached were copies of time records, a disclosure of compensation form completed by Attorney Bedford, and a Chapter 13 Retainer Agreement bearing the electronic signature of Joel Thomas but no signature of

Deann Thomas. On November 6, 2023, the Trustee filed an objection to the Application highlighting numerous entries in the attached time records that appeared to be inflated or otherwise inaccurate and were attributable to work that was not necessary or was only necessary due to attorney error. The Trustee's primary concern, however, was that the attached time records showed the petition being filed several days before it was sent to the Debtors for review and signature and that the retainer agreement was not signed by both Debtors.

The deadline for objections expired without any other objections having been filed. The Court then entered an order giving Attorney Bedford until December 12, 2023, to respond to the Trustee's objection. On that date, Attorney Bedford filed a motion for extension of time asking for an additional 30 days to respond to the objection. The request for extension was granted by order that also provided notice to Attorney Bedford of the seriousness of the allegations raised in the Trustee's objection, that her conduct appeared to violate Bankruptcy Rule 9011, and that sanctions for her conduct might be warranted.

On January 11, 2024, Attorney Bedford filed her response to the Trustee's objection. She also filed several pages of exhibits with her response. The response stated that, because the Debtors' case was filed as an emergency to stop the sale of their vehicle, Attorney Bedford did not have time to go over all documents with them before filing the case. Attorney Bedford asserted that she sent the Debtors "the signature pages of the sections they were able to

complete[,]" agreeing to file a skeleton petition upon the Debtors' signing and faxing of the signature pages back to her. Among the exhibits filed by Attorney Bedford were signature pages for Official Form 107 Statement of Financial Affairs, Official Form 106Dec Declaration About an Individual Debtor's Schedules, Official Form 121 Statement About Your Social Security Numbers, Official Form 122C-1 Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period, and Verification of Creditor Matrix. The pages bear undated signatures for both Debtors and contain a date and time stamp indicating a fax transmission date of February 23, 2023. No signature page was included for Official Form 101 Voluntary Petition for Individuals Filing for Bankruptcy.

The response went on to state that Attorney Bedford set a later date to review "the entire petition" with the Debtors, which apparently occurred on March 1, 2023. That meeting was followed by an email containing the petition to be signed by them and returned. Reference was made to the exhibits to the response, which show a string of emails in early March between Attorney Bedford and the Debtors seeking authorization to file documents purportedly attached to the emails. The attachments, however, were not included. At the March 1st meeting, Attorney Bedford said she spoke with the Debtors about their prior cases. According to her, when the Trustee objected to the Debtors' motion to extend the automatic stay based on the factual inaccuracies therein, the Debtors acknowledged that their recollection was faulty and offered a copy of a check they said they provided to their attorney in the prior case with the

expectation that he would "attend the hearing and present the check to the court to keep that case going, but the attorney did not show." The response further asserted that the Trustee was agreeable to the amended motion to extend the stay, suggesting that the amended motion was only denied because the Court refused to consider it.

Attorney Bedford's response sought to defend her fee request by explaining that she is accustomed to charging a flat fee for cases and does not typically keep track of billable hours, conceding that the itemized time records are incomplete and do not accurately reflect the work done in the case. Attorney Bedford also tried to distance herself from the retainer agreement signed by only Mr. Thomas, taking the position that the agreement was made with Recovery Law Group rather than herself and that any issues would be better addressed by Recovery Law Group. Indeed, Attorney Bedford suggested that Recovery Law Group should have been added as a respondent or interested party to the Trustee's original motion to disgorge, and she disavowed knowledge of or responsibility for the agreement with the Debtors. Finally, she claimed without citation to authority that, because she ultimately got a plan confirmed for the Debtors, there was no basis for the denial of her fees in whole or part.

The Application for Compensation of Attorney Fees was taken under advisement. The Court has reviewed and considered the Application, objection, response, and case record; the matter is ready for decision.

## II.     Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). The awarding of professional fees and matters involving the administration of an estate are core proceedings. 28 U.S.C. §157(b)(2)(A), (B). The matters here arise directly from the Debtors' bankruptcy and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III.     Legal Analysis

### A. The Problems in this Case Preclude Awarding Attorney Fees.

The District Court for the Central District of Illinois has adopted the Rules of Professional Conduct as promulgated by the Illinois Supreme Court to govern practice in all federal courts within the District. CDIL-LR 83.6(D). Under those rules, a lawyer is required to provide competent representation to clients, and competent representation is defined as requiring the "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Ill. R. Prof'l Conduct (2010) R. 1.1 (eff. Jan. 1, 2010). Lawyers are also prohibited from charging or collecting unreasonable fees. Ill. R. Prof'l Conduct (2010) R. 1.5(a) (eff. Jan. 1, 2010).

Fees charged by debtors' attorneys in bankruptcy cases are subject to judicial review and approval based on the reasonableness of amounts charged. 11 U.S.C. §§329, 330. The bankruptcy judges for the Central District of Illinois generally allow attorneys to charge a flat, "no-look" fee to represent a Chapter 13 debtor through their bankruptcy case. Under the Standing Order Regarding Attorney Fees for Debtor's Counsel in Chapter 13 Cases in the Central District of Illinois (All Divisions) that was in effect at the time this case was filed, a "no-look" fee of $4250 could reasonably be charged in most cases.[2] But the "no-look" fee procedure does not lessen the expectations and standards for providing competent representation. Where, as here, it is evident that the quality of services provided by an attorney falls below minimum standards required, it is appropriate to deny the offending attorney the benefit of the "no-look" fee. *In re Carter*, 2014 WL 4802919, at *5 (Bankr. C.D. Ill. Sept. 26, 2014).

This Court previously concluded that awarding Attorney Bedford the "no-look" fee in this case would not be appropriate and entered an order requiring an itemized application for any compensation sought. The burden of proving entitlement to compensation requested rests with the applicant. *In re Vancil Contracting, Inc.*, 2008 WL 207533, at *2 (Bankr. C.D. Ill. Jan. 25, 2008) (citations omitted). Attorney Bedford did not meet her burden.

Notwithstanding the numerous problems with Attorney Bedford's Fee Application and her overall handling of this case, the Trustee's objection

---

[2] An updated Standing Order Regarding Attorney Fees for Debtor's Counsel in Chapter 13 Cases has been in effect since January 1, 2024, and is applicable to all cases filed on or after that date.

focuses primarily on two crucial allegations: the retainer agreement was not signed by both Debtors, and neither Debtor signed the petition before it was filed.

### 1. Lack of Fully Executed Retainer Agreement

The Chapter 13 Retainer Agreement purportedly executed by Recovery Law Group with Joel Thomas and the various disclosures required of debt relief agencies under §527 relate only to Joel Thomas—none of the documents mentions or purports to be signed by Deann Thomas. The agreement and disclosures were included as exhibits to the Fee Application, along with an electronic signature audit trail showing that Joel Thomas signed the documents on January 5, 2023. Strangely, the time records included with the Fee Application represent that the retainer agreement was signed January 12, 2023.

The provisions of the Code related to debt relief agencies apply to Attorney Bedford and the issues before the Court. Attorneys for consumer debtors are debt relief agencies. *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, 235-36 (2010). Section 528 sets forth affirmative requirements for debt relief agencies, including that, "prior to such assisted person's petition under this title being filed, [the debt relief agency shall] execute a written contract with such assisted person that explains clearly and conspicuously" the services to be provided and the fees charged. 11 U.S.C. §528(a)(1). A copy of the fully executed and completed contract must also be provided to the assisted person. 11 U.S.C. §528(a)(2). Section 527, in turn, mandates specific

disclosures that debt relief agencies must provide in writing to assisted persons. 11 U.S.C. §527. Debt relief agencies are further required to maintain copies of the notices required under §527 for two years after they have been provided to the assisted person. 11 U.S.C. §527(d).

Section 526 provides remedies for violations of its own provisions as well as violations of §§527 and 528. If a debtor's attorney violates the applicable provisions governing debt relief agencies, whether intentionally or negligently, the attorney may be required to disgorge fees and reimburse the debtor-client for actual damages and attorney fees. 11 U.S.C. §526(c)(1), (2)(A). Civil penalties and injunctive relief may also be available. 11 U.S.C. §526(c)(5).

As a preliminary matter, there appears to be no question about whether the Debtors are "assisted persons" under the Code; the agreement and related notices signed by Mr. Thomas incorporate the disclosure obligations of debt relief agencies, and nothing in the case record suggests that the Debtors are not "assisted persons" based on the value of their nonexempt property or the nature of their debts. 11 U.S.C. §101(3), (8). Likewise, there is no question about whether the provisions of §§527 and 528 apply to Attorney Bedford; she represents consumer debtors in bankruptcy cases and is a debt relief agency as defined by statute. *Milavetz*, 559 U.S. at 235-36. The issue then is whether Attorney Bedford has complied with the provisions governing debt relief agencies and the requirement that they enter into written agreements with assisted persons. She has not so complied.

The failure to execute a written attorney retention and fee agreement with Deann Thomas regarding her bankruptcy filing clearly violated the

provisions of §528(a).[3] Further, because only Joel Thomas signed the notices required under §§342 and 527 and the retainer agreement acknowledging their receipt, the inference to be drawn is that Deann Thomas did not receive the statutorily required notices in violation of §527.

Attorney Bedford's repudiation of the retainer agreement because she claims it was executed by a representative of Recovery Law Group other than herself is troubling and not helpful to her cause. She is the attorney of record for the Debtors in this case, she submitted a disclosure of compensation verifying the amount she agreed to accept as their attorney, she filed the Fee Application now before the Court, and she provided the agreement at issue in support of her fee request. And as set forth above, Attorney Bedford is a debt relief agency as defined by the Code and obligated to comply with the debt relief provisions of the Code. If her position is that the agreement she submitted in support of her Fee Application is not her agreement with the Debtors, then where is her agreement as required by §528(a)(1)? She has not produced a separate agreement between herself and the Debtors, and the only inference to be drawn is that no such agreement exists. Not having a written agreement with both Debtors is a clear violation of the provisions governing debt relief agencies.

As set forth above, remedies for violations of §§527 and 528, even if unintentional, include disgorgement of fees and reimbursement for actual damages. 11 U.S.C. §526(c)(1), (2)(A). Further, under the standing order on

---

[3]There is also some question about whether the retainer agreement was properly executed as it relates to Joel Thomas. Such agreements must be executed by the debt relief agency—in this case, Attorney Bedford. 11 U.S.C. §528(a)(1). She did not sign the agreement. The agreement has the name "Nicholas Wajda" typed above a signature line for the "firm," but there is nothing to indicate that the typed name was intended to be a digital signature. The signature line for the "firm" is also undated. Nicholas Wajda is not an attorney licensed to practice in the Central District of Illinois, and the time records submitted with the Fee Application do not show that he had any contact with Joel or Deann Thomas at any time during the pendency of this case.

Chapter 13 attorney fees in effect when this case was filed, any award of fees is contingent on having a written agreement with the Debtors that provides for the fees requested. The only agreement presented to the Court for consideration was not signed by Deann Thomas or apparently anyone on behalf of Attorney Bedford or her firm. Attorney Bedford's disavowal of that agreement leaves nothing for the Court to consider; without an agreement, no compensation may be awarded.

### 2. Filing of the Bankruptcy Petition

In addition to those already discussed, the required professional standards in bankruptcy include the provisions of Federal Rule of Bankruptcy Procedure 9011, which provides, in part:

> (b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —
>
> . . .
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Bankr. P. 9011(b)(2), (3).

The time records submitted by Attorney Bedford show that the case was filed as an emergency on February 24, 2023, but the petition was not reviewed with and sent to the Debtors for signing until March 1, 2023. Although a time entry reflects that Attorney Bedford "filed remaining schedules" on March 5, 2023, followed by identical entries for "Client called with general questions sent to signings" on March 7 and 8, the time records do not contain an entry suggestive of when the petition was actually signed by the Debtors. And despite being specifically asked to address the concerns about the signing of the petition, Attorney Bedford failed to do so.

In her response to the Trustee's objection, Attorney Bedford asserted that her paralegal sent the Debtors the petition; what she did not say is when it was sent. She said that she sent signature pages to the Debtors, which were signed and faxed back to her; but the voluntary petition is noticeably absent from the signed documents attached to her response.[4] Confusingly, Attorney Bedford's response also stated that she reviewed the "entire petition" with the Debtors on March 1st, before sending it to them for signing. Nothing about Attorney Bedford's response or the attachments thereto provides any clarity about when the petition was signed, leaving the Court no choice under the circumstances but to conclude that the Debtors did not sign the voluntary petition prior to it being filed.

A voluntary bankruptcy case "is commenced by the filing . . . of a petition . . . by an entity that may be a debtor[.]" 11 U.S.C. §301(a). "All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. §1746." Fed. R. Bankr. P. 1008.

---

[4] The attached documents show a fax transmission date of February 23, 2023. Even had the signature page for the voluntary petition been included in the February 23 fax, it would conflict with the filed petition bearing the electronic signatures for the Debtors dated February 24, 2023.

When an unsworn declaration is made, it must be in writing and dated and the maker must declare under penalty of perjury that the information provided is true and correct. 28 U.S.C. §1746. The electronic signatures of the Debtors affixed to the petition represented under penalty of perjury that they had signed the petition on February 24, 2023, and that the information provided therein was true and correct.

Attorney Bedford's electronic signature was also affixed to the petition. By signing and filing the petition, Attorney Bedford certified that, to the best of her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the factual allegations of the petition had evidentiary support. Fed. R. Bankr. P. 9011(b). That is, she certified that, based on her actual inquiry, the Debtors had signed the petition on February 24, 2023, and that the information contained in the petition was true and correct. Likewise, §526(a)(2) prohibits making a statement "that is untrue or misleading, or that upon the exercise of reasonable care, should have been known . . . to be untrue or misleading[.]" 11 U.S.C. §526(a)(2). In filing the petition, Attorney Bedford stated that every representation therein was true and correct.

The Local Rules of the District Court for the Central District of Illinois, which apply in all bankruptcy cases and proceedings, provide that when the signature of a party is required on a document to be filed electronically, the original signature of any non-filing party must be obtained before the document is electronically filed. CDIL-LR 11.4(B)(1). The General Order Regarding Electronic Signatures entered by the bankruptcy judges for the

Central District of Illinois on March 24, 2020, provides that when an electronic signature is affixed to a filed document, the filer must have evidence that the document was signed prior to filing—whether through an electronic signature audit trail or by collecting the original or a copy of the signed document—and must obtain and maintain the originally signed document for a period after filing.

If the Debtors did sign the petition prior to filing their case, Attorney Bedford must not have evidence of it; otherwise, she would have provided it. Her response to the Trustee's objection only vaguely suggested that the Debtors signed some documents without directly asserting that they in fact signed the petition before the case was filed. Under the circumstances, the Court can only conclude that Attorney Bedford filed the petition commencing this case without first obtaining the Debtors' signatures. In doing so, she violated provisions of the Bankruptcy Code, the Bankruptcy Rules, the Judicial Code (title 28), the District Court Local Rules, and this Court's General Order. Whether it was an emergency or she had permission from the Debtors to file the case is irrelevant. "[D]ebtors are not legally capable of granting attorneys permission to violate" controlling law. *In re Husain*, 533 B.R. 658, 696 (Bankr. N.D. Ill. 2015).

The question of whether an attorney can sign a client's name to a document is not a "grey area" or something about which reasonable people might differ. *Id.* at 695. Unless an attorney holds a formal power of attorney for the client or has been appointed as the client's guardian, the attorney cannot sign the client's name to bankruptcy documents and cannot make the required

declaration under penalty of perjury for the client. *Id.* at 695-96; *In re Hurford*, 290 B.R. 299, 301-02 (Bankr. E.D. Mich. 2003); *see also* 28 U.S.C. §1746. The Debtors could not authorize Attorney Bedford or anyone else associated with her to sign their names to their bankruptcy petition, and they could not relieve Attorney Bedford of her obligations under the District Court Local Rules or this Court's General Order Regarding Electronic Signatures. Regardless of any urgency—real or perceived—to get a case on file, no circumstances ever justify an attorney filing a petition, schedules, or statement of financial affairs without the debtor first having signed the documents or accompanying declaration. *See In re Klitsch*, 587 B.R. 287, 292 (Bankr. M.D. Pa. 2018) (the critical issue is whether the debtor has complied with Rule 1008 by signing the filed document so that their attorney can comply with Rule 9011 by endorsing the filing); *cf. In re Stomberg*, 487 B.R. 775, 807 (Bankr. S.D. Tex. 2013) (citing *In re Phillips*, 317 B.R. 518, 521 (B.A.P. 8th Cir. 2004)) (failure of attorney to obtain "wet signature" before filing violated Rule 9011).

As noted in the Trustee's objection, filing a petition without a debtor's signature is prohibited. The electronic filing of a petition purportedly signed but in fact not signed by the debtor "is no different than physically forging the debtor's signature on a paper document." *Stomberg*, 487 B.R. at 808 (collecting cases). But, as egregious as it was to affix the Debtors' signatures and file the petition that they had not actually signed, it is not the only misrepresentation made in filing the petition.

As the Trustee pointed out early in the case, Attorney Bedford failed to disclose on their petition a prior case filed by the Debtors. Prior cases filed in 2017 and 2021 were listed, but the Debtors' most recent prior case filed in 2022 was not identified. That information was readily available to Attorney Bedford had she only run a PACER search prior to filing. She should have known about the 2022 case; it is obvious she did not even inquire—reasonably or otherwise—as to the accuracy of information provided in the petition. *See* 11 U.S.C. §526(a)(2); Fed. R. Bankr. P. 9011(b).

### 3. *Other Filings*

The failure to disclose the 2022 bankruptcy case was raised in the Trustee's objection to the Debtors' motion to extend the automatic stay and her contemporaneously filed motion to disgorge attorney fees that resulted in the order denying Attorney Bedford the "no-look" fee and, eventually, the Fee Application now before the Court. The factual inaccuracies made in the Debtor's original motion to extend the automatic stay were troubling. Even though the 2022 bankruptcy case was not disclosed on the petition commencing this case, Attorney Bedford acknowledged the Debtors' prior filing and its subsequent dismissal in the motion to extend the stay, asserting that it was dismissed voluntarily per the Debtors' request made at a hearing held March 21, 2022. That representation was entirely false. The Debtors never sought voluntary dismissal of the 2022 case; it was dismissed without hearing based on their failure to pay the filing fee. Further, the motion asserted Mrs.

Thomas' job loss in 2022 as contributing to the decision to file the present case, even though no wage income for Mrs. Thomas had been reported in this case for 2022 or the surrounding years. The filing of the motion to extend stay containing plainly false but easily verifiable information is another example of Attorney Bedford's utter lack of care for the accuracy of the documents she was signing and filing in this case.[5]

On this issue too, Attorney Bedford's response to the Trustee's objection to fees was not helpful. In it, she sought to justify the motion to extend stay, citing her reliance on the Debtors' explanation and offering a new narrative of events involving a hearing that, again, never occurred and a personal check made out to the Debtors' attorney in the prior case for the amount of the filing fee. They apparently presented a copy of the check to Attorney Bedford, who in turn filed it as an exhibit to her response. But the check was dated and processed after the prior case was dismissed. It is not entirely clear what point Attorney Bedford was trying to make, but the takeaway is that she continues to make representations to the Court without verifying their accuracy against the Court docket and other available information.[6] At this stage, with her fees on

---

[5] When the Court asked Attorney Bedford at the hearing on the motion whether she had reviewed the docket of the 2022 case before filing the motion, she said that she had. When then asked how she could have reviewed the docket and still asserted that the case was dismissed based on a motion not shown as filed and a hearing not shown as having been set or held, she replied that sometimes clerk's office staff make mistakes.

[6] In her response, Attorney Bedford also mischaracterized the comments of the Trustee's attorney at the March 22 hearing. She claimed that the attorney expressed the Trustee being agreeable to the amended motion to extend the stay assuming it was factually correct. But what the Trustee's attorney said was that the Trustee might not have objected to the original motion to extend stay had it been factually accurate and that he could not speak to how any corrections might affect the posture of the case going forward without having an opportunity to review the amended motion.

the line, it is stunning that Attorney Bedford still does not take the time to check her work.

Other examples of Attorney Bedford's sloppiness and carelessness abound. Numerous filings were stricken for various reasons, including but not limited to a lack of signature, failure to update the mailing matrix, and use of improper docket events. Mistakes do happen, and this Court is not unsympathetic to the many challenges attorneys face. But this case has been plagued by deficiencies and inaccuracies; at practically every turn, each filing required correction or created inconsistencies within the record. And as the Trustee's objection to fees highlights, Attorney Bedford's general carelessness toward the significance of affixing electronic signatures to documents is particularly troubling.

Although the Debtors' electronic signatures affixed to the original petition were first called into question by the documents attached to the Fee Application, it was not the first time Attorney Bedford's misuse of electronic signatures came under scrutiny in the case. The Debtors' first amended Chapter 13 plan, filed May 24, 2023, contained electronic signatures for them and Attorney Bedford postdated May 25, 2023. But included with the filing was a copy of a second signature page bearing the Debtors' physical signatures dated May 24, 2023. What might have otherwise been brushed off as a scrivener's error was compounded by the fact that the filed plan contained certain nonstandard provisions set forth on the final page with the Debtors' and Attorney Bedford's electronic signatures despite those nonstandard

provisions being conspicuously absent from the document actually signed by the Debtors. It was evident at the time of filing that the first amended plan violated Rule 9011 and was emblematic of a pattern of sloppiness on the part of Attorney Bedford. Now, in light of developments surrounding the retainer agreement and signing of the voluntary petition, it is increasingly clear just how little regard Attorney Bedford has for the significance and gravity of affixing electronic signatures to documents she files with the Court.[7]

The minimum standards required of attorneys representing debtors in bankruptcy were not met in this case. The voluntary petition commencing the case was filed in violation of Bankruptcy Rules 1008 and 9011, §§526 and 528 of title 11, §1746 of title 28, Local Civil Rule 11.4(B)(1) of the District Court for the Central District of Illinois, and this Court's General Order Regarding Electronic Signatures. The motion to extend the automatic stay filed shortly thereafter violated §526 and Bankruptcy Rule 9011. And the filing of the Debtors' first amended plan likewise violated Bankruptcy Rule 9011. Other documents contained obvious errors or were plainly inconsistent with other documents in the record. Attorney Bedford failed to make a reasonable inquiry, if any, into the accuracy of the representations made in the documents she was filing with the Court. *In re Hart*, 540 B.R. 363, 369-70 (Bankr. C.D. Ill. 2015).

---

[7] The Trustee's objection also notes the fact that Attorney Bedford's time records do not show plans being sent to the Debtors for signature or their signatures being obtained despite each of the six plans filed bearing their electronic signatures. It is problematic that Attorney Bedford's time records lack detailed information to justify her fee request—an issue that is addressed in greater detail below. But the Court is reluctant to find, based on the lack of detail in the time records, that the Debtors did not sign any of the documents to which their electronic signatures were affixed. The "wet" signature page attached to the first amended plan belies such a finding in absolute terms. It suffices to say that Attorney Bedford's time records raise more questions than they answer and do little to support her request for fees.

Her indifference toward the representations being made to the Court and the resulting errors had a cumulative effect that led to other problems and complications in what should have been an unexceptional case. Most, if not all, of the problems in this case could easily have been promptly cured if not avoided altogether had Attorney Bedford simply taken the time to give the case the necessary attention. *Carter*, 2014 WL 4802919, at *7 (significant reduction in fees because problems could have been easily avoided). The quality of legal work here fell so far below the standards of competent representation that any award of fees would be unreasonable.

### B. The Application is Inadequate to Justify Any Fee Award.

Even if the Court could ignore the serious problems in Attorney Bedford's handling of the case, the Fee Application itself is inadequate to justify an award of fees. In considering an attorney's request for fees, the Court must evaluate the application based on a variety of factors, including the time spent and the rates charged. *See* 11 U.S.C. §330(a)(3). The applicant having the burden of proving entitlement to fees, Attorney Bedford's Fee Application needed to "provide sufficient information for [the Court] to understand what services were actually provided and to determine whether the fees requested are reasonable and the services rendered were necessary and beneficial." *In re Gvazdinskas*, 2010 WL 1433308, at *2 (Bankr. C.D. Ill. Apr. 8, 2010); *Vancil Contracting*, 2008 WL 207533, at *2-3. Bankruptcy Rule 2016 requires that applications be "detailed." Fed. R. Bankr. P. 2016. In terms of supplying the information

necessary for the Court to accurately assess what services were actually provided, contemporaneously kept time records are essential. *In re Ruebling*, 2016 WL 6877796, at *7 (Bankr. C.D. Ill. Nov. 21, 2016) (citing *In re Basham*, 208 B.R. 926, 931 (B.A.P. 9th Cir. 1997) *aff'd sub nom In re Byrne*, 152 F.3d 924 (9th Cir. 1998); *In re Newman,* 270 B.R. 845, 847-48 (Bankr. S.D. Ohio 2001)); *see also Hart*, 540 B.R. at 370 (citing *Carter*, 2014 WL 4802919, at *8-11; *In re Bergae*, 2014 WL 1419586, at *7 (Bankr. C.D. Ill. Apr. 11, 2014)). Absent contemporaneous time records, an attorney may be unable to justify their request for fees and could be caught short. *Ruebling*, 2016 WL 6877796, at *7-8 (citations omitted).

It was not initially clear whether the "itemization of services" attached to the Fee Application was based on contemporaneous or reconstructed time records. But in light of Attorney Bedford's response to the Trustee's objection, there is little doubt that the records were reconstructed. And, in any event, it is abundantly clear that the records are inaccurate and unreliable for the Court's purposes.

Several entries reflect tasks being completed on certain dates that are contradicted by the electronic case docket. Some tasks were performed on a different date. For instance, the itemization includes an entry for filing the Debtors' motion to extend the automatic stay on March 8, 2023, but the motion was actually filed March 7th. Another entry asserts time for attending a hearing on March 23, 2023, but no hearing was held that day; a hearing was held on March 22, 2023. At least one entry asserts time for a task that was not

performed. The single entry from June 15, 2023, is described as "response to objection" but the only filings in the docket on that date were the Trustee's objection to the second amended plan and response to the Debtors' emergency motion to vacate. Attorney Bedford filed responses to the Trustee's filings but not until June 26, 2023, as reflected in a separate billing entry for that date. Several other tasks that were completed in the case are conspicuously absent from Attorney Bedford's itemization—a fact she readily acknowledged in her response.

Collectively, the discrepancies raise serious doubts about the trustworthiness of Attorney Bedford's time records for purposes of determining what services were actually provided. And when a court is unable to ascertain what work was done, it cannot meaningfully apply the factors for determining the amount of reasonable compensation under §330(a)(3). *In re Cervantes*, 617 B.R. 687, 694 (Bankr. E.D. Cal. 2020); *see also Hart*, 540 B.R. at 370; *accord Basham*, 208 B.R. at 932, *Newman*, 270 B.R. at 847-48. Fees may properly be denied on that basis alone. *Id.*

But even if the Court could look past the obvious inaccuracies, omissions, and broader reliability concerns discussed above, the descriptions of tasks or services performed for each entry are so generic that they are altogether too vague for the Court to evaluate their reasonableness. Descriptions like "Client called with general questions sent to signings" only beg further questions about whether the Debtors called Attorney Bedford or she called the Debtors with questions, and what the phrase "sent to signings"

means. Generic entries like "spoke the (sic) client" and "email sent to client" similarly provide nothing to allow the Court to conclude that the amounts charged—however modest—are reasonable. Further, the Trustee contends that a significant portion of the time billed is attributable to correcting errors and that the additional charges would not have been necessary had the work been done correctly to begin with. Indeed, the reasonableness and necessity of particular tasks is obfuscated by repeat entries for the same or similar generic tasks such as filing amended documents without any context about the specific document and why it was necessary.

In addition to Attorney Bedford's time, a large portion of the billed time was for tasks performed by non-attorney staff without providing the necessary information to justify the charges. *Ruebling*, 2016 WL 6877796, at *8. "A [paraprofessional's] time may be compensable when the [paraprofessional] performs legal work and has the knowledge and experience to do the work competently." *Id.* (citations omitted). Services that are clerical or secretarial in nature, however, are properly charged to overhead and cannot be separately charged to the client. *Bergae*, 2014 WL 1419586, at *7 (citing *In re CF & I Fabricators of Utah, Inc.,* 131 B.R. 474, 489 (Bankr. D. Utah 1991)). Determining whether a paraprofessional's work is compensable requires information regarding not only the specific tasks performed by the person but also that person's ability and competency to perform substantive legal work. *Bergae*, 2014 WL 1419586, at *7 (citations omitted). Thus, "[w]hen an applicant

for professional fees seeks compensation for a paraprofessional's work, the paraprofessional's experience and qualifications must be stated." *Id.*

Here, no information was provided about the knowledge, experience, or qualifications of non-attorney staff who worked on the Debtors' case. Individual time entries identify the person performing the work billed for by name and assigned title—"Legal Assistant" or "Paralegal" for non-attorneys—but those labels are not helpful in assessing the person's competency to perform substantive legal work. *See generally Ruebling*, 2016 WL 6877796, at *8*; In re Brennan*, 2013 WL 4046447, at *8 (Bankr. C.D. Ill. Aug. 8, 2013); *CF & I Fabricators*, 131 B.R. at 490-91. As a result, the Court is unable to conclude that any of the time billed for tasks performed by non-attorneys is compensable. *See Ruebling*, 2016 WL 6877796, at *8.

Also problematic is the number of different staff members working on the case. From the initial consultation until Attorney Bedford's first review of the petition before filing, at least a dozen different non-attorneys did some work on the case.[8] It appears from the time entries that none of those staff members was in charge of the case or exercised any apparent supervisory role in making sure that all required information was collected and reviewed for accuracy. The significant volume of errors in the case is thus not surprising. And even if more were known about the education, experience, and other qualifications of the

---

[8]The initial time entry on the Fee Application shows a free consultation provided by "M. Reid," who is identified as an attorney. But at the time, in January 2023, no one by that name and associated with Recovery Law Group or any of its affiliates was licensed to practice in the Central District of Illinois. On April 27, 2023, more than three months after the initial consultation, a Michael Thomas Reid, associated with Wajda Law Group, APC, in San Diego, California, became licensed here.

various staff members working on this case, it would be difficult to find, given the way the case has been handled, that any staff member working for Attorney Bedford possesses the competency necessary to independently charge an hourly rate for substantive legal work.

Further, even if it had been established that the non-attorneys had sufficient knowledge and expertise to perform substantive legal work, the Application lacks the information necessary for the Court to conclude that the work performed was legal rather than simply clerical in nature. Examples of clerical work that have been determined to be not compensable include data entry, updating databases, drafting correspondence, creating PDFs, filing and uploading documents to the court docket, mailing documents, calendaring, proof reading, and time spent finding and correcting mistakes. *See, e.g.*, *Bergae,* 2014 WL 1419586, at *7; *Brennan,* 2013 WL 4046447, at *8; *CF & I Fabricators*, 131 B.R. at 485-86, 492. Most of the entries attributed to non-attorneys here describe what can only be construed as clerical work. For instance, numerous entries totaling nearly $1000 in charges are described simply as "Uploaded client documents." Those entries do reflect paralegal or legal assistant time; but, absent more detail, the charges appear to consist of basic data entry and internal record keeping, which are not compensable. The remaining charges for legal assistant and paralegal time are essentially comprised of sending updates and reminders to the Debtors and Attorney Bedford about scheduling and paperwork, set forth in nondescript terms. Again, absent compelling information to the contrary, those are non-

compensable clerical tasks. Accordingly, the Court finds that the time expended by non-attorneys in this case falls into the category of law office overhead for which fees cannot be awarded.

Attorney Bedford's Fee Application and accompanying time records are inadequate to justify the requested compensation. The Fee Application is scarcely detailed, and the time records are unreliable. Further, from what the Court can glean, substantial portions of the time billed would not be compensable as legal work. No amount of compensation can be justified by the Fee Application.


## IV.    Conclusion

Attorneys are entitled to reasonable compensation for representing debtors before this Court, but it is their burden to establish that they are so entitled. *In re Eskew*, 2012 WL 4866687, at *10 (Bankr. C.D. Ill. Oct. 12, 2012); *Vancil Contracting*, 2008 WL 207533, at *2. Having already come under scrutiny for her handling of the Debtors' case and been denied the benefit of the "no-look" fee, Attorney Bedford was on notice that she would need to make a compelling case for any fee award. Unfortunately, she failed to meet her burden, and the problems in the case—past and present—coupled with the inadequacy of her Application warrant denial of any and all fees.

Attorney Bedford's Fee Application and her response to the Trustee's objection provide overwhelming evidence of her lack of understanding of her role as an attorney in this and perhaps other cases. She does not appear to

fully appreciate that she is personally subject to the Bankruptcy Code and Rules and that she is a debt relief agency. Although she is free to practice in a firm and to use the firm's staff to assist her, nothing about such an arrangement relieves her of her personal obligations under the Bankruptcy Code and Rules or the applicable rules of professional conduct. Likewise, her filing of a petition for the Debtors with apparently forged signatures is beyond troubling. As the cases cited above suggest, signing a debtor's name to a bankruptcy petition or other such documents without having evidence in hand that the debtor actually signed the document may result in not only a denial of fees but also the loss or suspension of the attorney's law license. Attorney Bedford's cavalier attitude about the practice of law as evidenced by her conduct here is highly problematic and may lead to further sanctions. The Order accompanying this Opinion will be limited to the fee issue directly before the Court, but nothing herein should be construed as suggesting that Attorney Bedford will not face other consequences for her conduct.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###